No. 26-30018

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

TERRANCE MORGAN,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-cr-00277-2

**APPELLANT'S BRIEF**

CLAUDE J. KELLY
Federal Public Defender
Eastern District of Louisiana

SAMANTHA J. KUHN
Assistant Federal Public Defender
Office of the Federal Public Defender
500 Poydras Street, Suite 318
Hale Boggs Federal Building
New Orleans, Louisiana 70130
(504) 589-7930
Samantha_Kuhn@fd.org

## CERTIFICATE OF INTERESTED PERSONS

*United States v. Terrance Morgan*
No. 26-30018

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.  *Defendant-Appellant:* Terrance Morgan.

2.  *Counsel for Defendant-Appellant:* Federal Public Defender Claude Kelly; Assistant Federal Public Defender Samantha Kuhn.

    *Former Counsel for Defendant-Appellant*: Assistant Federal Public Defender Maura Doherty.

3.  *Counsel for Plaintiff-Appellee:* U.S. Attorney David Courcelle; Assistant U.S. Attorneys Kevin Boitmann, Patrick Barr, Maria Carboni, and Megan Roberts.

4.  *Former Counsel for Plaintiff-Appellee*: Former U.S. Attorneys Kenneth Polite, Jr., and Peter Strasser; Former Acting U.S. Attorney Michael Simpson; Assistant U.S. Attorneys Matthew Payne, Alexandra Giavotella, Shannon Kippers, Michael Redmann, and Charles Strauss.

/s/ Samantha Kuhn
SAMANTHA J. KUHN
Assistant Federal Public Defender
Dated: March 18, 2026

ii

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Terrance Morgan respectfully requests oral argument. This appeal arises from a chaotic revocation hearing in which the district court refused to grant an unopposed continuance request and relied on multiple errors of law and fact to revoke Mr. Morgan's supervised release and sentence him to a term of imprisonment. Considering the number and fact-specific nature of the issues raised in this appeal, oral argument would facilitate the Court's resolution of Mr. Morgan's challenges.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................ii

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF AUTHORITIES.................................................................vi

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUES..............................................................2

STATEMENT OF THE CASE ................................................................3

SUMMARY OF THE ARGUMENT ........................................................13

ARGUMENT .......................................................................................14

    I.    The district court abused its discretion by relying on multiple errors of law and fact to revoke Mr. Morgan's supervised release and impose a term of imprisonment...... 14

        A.    Standard of Review..................................................... 14

        B.    The district court erroneously believed that revocation and imprisonment was mandatory in Mr. Morgan's case, ignoring its duty to consider his participation in treatment. .................................... 14

        C.    The district court erroneously relied on an outdated version of the Guidelines Manual in revoking Mr. Morgan's supervision. ............................ 17

        D.    The district court relied on a clearly erroneous assessment of the evidence in revoking Mr. Morgan's supervision. ............................................23

    II.    At the very least, the district court abused its discretion when it denied Mr. Morgan's unopposed request to continue the revocation hearing. ..........................................27

iv

A.    Standard of Review ....................................................... 27

B.    The district court abused its discretion by denying Mr. Morgan's unopposed request for a continuance. ............................................................. 28

CONCLUSION .................................................................................. 33

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

CASES

*Esteras v. United States*, 606 U.S. 185 (2025) ................................... 22, 32
*Holguin-Hernandez v. United States*, 589 U.S. 169 (2020) ................... 15
*United States v. Brigham,* 569 F.3d 220 (5th Cir. 2009) ....................... 14
*United States v. Gentry,* 941 F.3d 767 (5th Cir. 2019) .......................... 24
*United States v. Ibarra,* 502 U.S. 1 (1991)............................................... 1
*United States v. Kersee,* 86 F.4th 1095 (5th Cir. 2023) ......................... 14
*United States v. Kimler,* 167 F.3d 889 (5th Cir. 1999) ........................... 17
*United States v. Mann,* 161 F.3d 840 (5th Cir. 1998)............................. 14
*United States v. Pearson,* 477 F. App'x 149 (5th Cir. 2012) ................... 27
*United States v. Stalnaker*, 571 F.3d 428 (5th Cir. 2009) ...................... 27

STATUTES

18 U.S.C. § 3553(a)(4)............................................................................ 17
18 U.S.C. § 3583 ................................................................. 14, 15, 17, 32
18 U.S.C. § 3583(d)......................................................................... 15, 32
18 U.S.C. § 3583(e) ............................................................................... 17
18 U.S.C. § 3583(g) ......................................................................... 15, 16
18 U.S.C. § 3742 ..................................................................................... 1
28 U.S.C. § 1291 .................................................................................... 1

RULES

Fed. R. Crim. P. 51(b)........................................................................... 15

SENTENCING GUIDELINES

U.S.S.G. § 1B1.11 ................................................................................. 18
U.S.S.G. § 7B1.1 (2024)........................................................................ 19
U.S.S.G. § 7B1.4 (2024).............................................................. 7, 16, 19
U.S.S.G. § 7C1.3 ............................................................................ 21, 30
U.S.S.G. § 7C1.5 ............................................................................ 15, 19
U.S.S.G. Ch. 7, Pt. C ...................................................................... 19, 32

**OTHER AUTHORITIES**

Amendments to the Sentencing Guidelines, U.S. SENTENCING COMM'N,
     (Apr. 30, 2025, *eff.* Nov. 1, 2025), ("2025 Amend.")................. 18, 20, 21

## STATEMENT OF JURISDICTION

This appeal is from a revocation of supervised release in a criminal case. The district court entered judgment on December 11, 2025. ROA.391–96. Appellant Terrance Morgan filed a timely motion for reconsideration of the judgment on December 22, 2025, *see* ROA.397–409, which was denied on January 5, 2026, *see* ROA.439. Mr. Morgan filed a timely notice of appeal on January 8, 2026. ROA.440; *see also United States v. Ibarra*, 502 U.S. 1, 6–7 (1991) (holding that filing a motion for reconsideration tolls the time for filing a notice of appeal). This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

(1)    Did the district court abuse its discretion in revoking Mr. Morgan's supervised release and imposing a term of imprisonment?

(2)    Did the district court abuse its discretion by denying Mr. Morgan's unopposed request to continue the revocation hearing following his successful completion of inpatient drug treatment?

## STATEMENT OF THE CASE

In 2018, Appellant Terrance Morgan pleaded guilty to federal drug and firearm offenses. ROA.287–300, ROA.310. The district court sentenced him to 82 months of imprisonment followed by three years of supervised release. ROA.334–36. Mr. Morgan completed his prison sentence and began his three-year term of supervised release in December 2022. ROA.456.

In 2023, U.S. Probation filed a petition for an arrest warrant, alleging that Mr. Morgan violated his conditions of supervised release. ROA.673. Probation alleged that he twice tested positive for drug use (specifically, amphetamines, marijuana, and cocaine), stopped attending outpatient treatment, failed to provide proof of employment, and stopped reporting and communicating with probation. ROA.680.[1] Probation later filed an amended petition adding an allegation that Mr. Morgan was arrested for domestic abuse in 2024, pleaded guilty to misdemeanor charges stemming from that arrest in 2025, and received a suspended prison sentence with two years of inactive probation. ROA.677, ROA.680.

---

[1] The petitions referenced herein appear to have been inadvertently omitted from the record on appeal. However, the dispositional report filed prior to Mr. Morgan's revocation hearing is in the record and recites the alleged violations. *See* ROA.679–83.

3

Probation further alleged that when he appeared in state court for probation status hearings in June 2025, he tested positive for drug use (amphetamines and cannabis), and that he failed to appear for a state probation status hearing on August 28, 2025. ROA.680.

In October 2025, Mr. Morgan appeared before a U.S. Magistrate Judge for his initial appearance on the alleged violations and a detention hearing. ROA.345–54. After hearing testimony from his U.S. Probation officer and employer, the court ordered that Mr. Morgan be released on bond to an inpatient treatment program. ROA.350–51, ROA.357, ROA.360–66. The court further ordered that, upon release from the inpatient treatment program, Mr. Morgan would be placed on home detention with location monitoring. ROA.370–72.

Mr. Morgan was released on bond and successfully completed the 30-day inpatient treatment program. ROA.459. He returned home, resumed his employment, continued attending outpatient treatment, and spent the remainder of his time with his children. ROA.459–60, ROA.462–64. In other words, following his federal arrest, Mr. Morgan completed inpatient treatment and had no further compliance issues.[2]

---

[2] Although Mr. Morgan reportedly tested positive for marijuana on

On December 11, 2025, the district court held Mr. Morgan's revocation hearing. ROA.389, ROA.454–67. At the outset, Mr. Morgan's counsel stated: "Your Honor, we are prepared to admit to the violations this morning, but we have a lot of things that we would like the Court to be aware of in addition to what's in the dispositional report." ROA.458. Rather that offering counsel an opportunity to explain the additional facts that counsel believed would be relevant to the court's decision, the court responded:

> All right. Mr. Morgan, we tried everything, we tried to get you removed. Just seems like you're getting worse. First marijuana, then eventually cocaine, and then physical violence. It's a downward slope for you. You served time, you know how that is. I just – you're a young person, you've got your whole life ahead of you. You can't go right back to the same group and the same friends that you have before. It's going to just repeat and it's going to get worse on you. You've got to do better than you're doing.

ROA.458–49.

Defense counsel explained to the court that Mr. Morgan's violations ultimately stemmed from drug issues with which he had been struggling, that he completed a 30-day inpatient treatment program while on bond,

---

November 18, 2025, neither probation nor the government disputed that it was based on a prior use from before he entered treatment. ROA.386; ROA.462.

and that he had since returned to his employment. ROA.459. Counsel further explained that Mr. Morgan was continuing to participate in outpatient treatment, had a great job, and was actively raising and supporting his young children. ROA.460. With Probation's support, counsel requested that the Court accept Mr. Morgan's admissions but set a later hearing to address whether his supervision should be revoked, thereby allowing him to continue demonstrating his ability to succeed on supervision. ROA.460.

The court did not address counsel's request, instead responding: "All right. Let me finish." ROA.460. The court proceeded to read the "Statutory Provisions and Sentencing Guidelines Provisions" section of the dispositional report. ROA.461; *see also* ROA.681–82. Then, the court (incorrectly) concluded that revocation was mandatory based solely on Mr. Morgan's positive drug tests, ignoring his successful completion of inpatient treatment. ROA.461–62. The court stated:

> Alleged violations include positive urine tests, illicit drugs, the Court may determine that these violations constitute possession of a violation of controlled substance. If that finding is made, the Court determines that drug treatment was available to the defendant and his performance was unsatisfactory, then supervised release must be revoked and Mr. Morgan must be sentenced to a term of imprisonment

6

pursuant to the United States Sentencing Guidelines 7B1.4, comment 5.

> *There's no dispute as to the fact that there was positive drug-- positive tests for drugs. Of course following revocation … the Court may impose supervised release ….*

ROA.461–62 (emphasis added).

After reading the statutory limits on imposing additional terms of supervised release following imprisonment, the court told Mr. Morgan: "[Y]ou have a right to make a statement, present any information you may wish in terms of mitigation of punishment"—again indicating that it believed revocation was mandatory and that "punishment" was the only remaining issue. ROA.462. Defense counsel requested to be heard again, reiterating that Mr. Morgan successfully completed inpatient drug treatment and had remained clean since then. ROA.462. Mr. Morgan stated that he regretted his poor decisions, explained that completing inpatient treatment gave him a different outlook, and told the court that he had registered for school, had a good job, and was in the process of getting a license. ROA.463. He told the court that he wanted "a chance to prove that [he] will follow through on the things that [he] should follow through on[.]" ROA.463. Defense counsel emphasized that "rehab was a game changer for Mr. Morgan." ROA.463.

Following Mr. Morgan's and his counsel's remarks, the district court asked: "Anything from the government?" ROA.464. The prosecutor responded: "No, Your Honor. And the government doesn't oppose defense counsel's request regarding setting a hearing at a later date either." ROA.464. The court then addressed Mr. Morgan, stating:

> Mr. Morgan, the problem I have is that we've given you so many times, so many opportunities, and you just don't show up at these things. You didn't even show up for your court appearance. I mean, it's something that you've got to – you've got to take into consideration. Particularly you've been sentenced, you know what it is there. Outside and you go right back to the same group and the same opportunities you have before you. You have to be -- you got to be more selective of your friends. As I've often said, they're like an elevator, boy, they can bring you up but they can sure take you down. You've got to establish a new group.

ROA.464. The court then sentenced Mr. Morgan to eight months of imprisonment followed by 24 months of supervised release. ROA.464.

Defense counsel objected to the revocation ruling and re-urged her request to reset the hearing so that the court could hear directly from Mr. Morgan's employer and family members, explaining that she believed the court was relying on inaccurate information regarding "who he has been hanging out with." ROA.466. Alternatively, counsel requested that the court provide Mr. Morgan with a surrender date after

the holidays. ROA.466. The court granted the latter request and set his surrender date for January 7, 2026. ROA.466–67.

While the clerk was preparing the surrender order, defense counsel re-urged her request to reset the hearing so that the court could "hear from all of his family members and his employer to have more information about the history and characteristics of the defendant." ROA.467. The court responded: "I've made my ruling, and I'm not going to change the ruling." ROA.467. The court went on to say:

> I am just concerned with domestic violence, this type situation. It's getting worse for him. He first takes marijuana, then he's got other things, also, and then domestic violence. It looks to me like it's getting worse. And this individual has been charged with domestic violence on one occasion, it's usually not – I've learned and I am not going to do it again, somebody gets hurt in the process, he is going to be in a worse situation than he is now. I mean, there's a victim involved in that type of situation and we're getting worse. Hopefully he'll change his ways, but from my standpoint, I can't take the chance of somebody getting hurt.

ROA.467–68. In response to the court's remarks, counsel attempted to explain that this was not a situation involving an abusive relationship, that it was a one-time incident, and that Mr. Morgan and the woman were now living together again "in total peace and harmony." ROA.468.

9

The court did not address counsel's comments and simply adjourned the proceeding. ROA.468.

Following the hearing, Mr. Morgan filed a motion for reconsideration of the district court's revocation judgment on due process grounds. ROA.397–409. Counsel identified several inaccuracies in the information upon which the court relied in revoking Mr. Morgan's supervised release, including its belief that Mr. Morgan has been consistently noncompliant with supervision, that his violations were escalating leading up to the revocation hearing, that he was "spending time with bad people," and that he had "multiple chances to reform his behavior" prior to the instant revocation proceeding. ROA.399. Counsel explained that Mr. Morgan's violations stemmed from his longstanding drug problem, that he only recently received the opportunity for focused inpatient care, and that he had not violated supervision since that time. ROA.403–04. Counsel further explained how revocation was unnecessary to prevent further violations and would be counterproductive to the rehabilitative goals of supervised release, disrupting Mr. Morgan's progress and interfering with his gainful employment. ROA.402–05. Mr. Morgan requested that the court "reconsider its previous judgment,

decline to revoke his supervised release, and leave the matter open for a period of three months to gauge [his] continued compliance." ROA.405.

The government filed an opposition to Mr. Morgan's motion. ROA.419–22. However, the government inaccurately characterized the motion as a request for "reconsideration of his sentence," argued that Mr. Morgan "cite[d] no cases that stand for the proposition that a sentence may be reconsidered," and confusingly argued that Federal Rule of Criminal Procedure 35 (which Mr. Morgan did not cite) was inapplicable. ROA.419–22. Mr. Morgan filed a reply, explaining that the government misconstrued his request and relied on inapposite precedent. ROA.427–29. Mr. Morgan also noted, however, that that the government did *not* dispute the veracity of the information he presented or the reasonableness of the relief he requested. ROA.427.

The district court scheduled oral argument on Mr. Morgan's motion for reconsideration. ROA.432. A few days later, the court cancelled the argument and denied the motion. ROA.439. The court stated: "Having reviewed the briefing in light of the applicable law and record facts, the Court finds that, for the reasons previously given from the bench at the December 11, 2025, revocation hearing, revocation of Mr. Morgan's

11

supervised release and a sentence of eight months incarceration remains appropriate." ROA.439.

Mr. Morgan filed a timely notice of appeal. ROA.440. He is presently incarcerated in local custody serving his prison sentence, with a projected release date of July 19, 2026.[3]

---

[3] This information is available on the BOP inmate locator website. *See* https://www.bop.gov/inmateloc/. Mr. Morgan's register number is 37056-034.

## SUMMARY OF THE ARGUMENT

The district court committed several errors in deciding to revoke Mr. Morgan's supervised release and impose a term of imprisonment, each constituting an abuse of discretion requiring remand for a new hearing. *First*, the district court erroneously believed that revocation and imprisonment was mandatory based on Mr. Morgan's positive drug tests, ignoring its obligation to consider whether his participation in drug treatment warranted an *exception* to the mandatory revocation statute. *Second*, the court erroneously relied on an outdated version of the Guidelines Manual and therefore failed to consider important additions that were made in 2025 to the policy statement governing supervised release revocations. *Third*, the court relied on clearly erroneous assessments of Mr. Morgan's history and conduct to revoke his supervised release, making statements throughout the proceeding that were contradicted by or lacked any evidentiary support in the record. For each of these reasons, Mr. Morgan's revocation judgment must be vacated and his case remanded for a new hearing.

At the very least, the court abused its discretion by denying his request for a continuance, independently requiring vacatur and remand.

## ARGUMENT

**I.    The district court abused its discretion by relying on multiple errors of law and fact to revoke Mr. Morgan's supervised release and impose a term of imprisonment.**

*A. Standard of Review*

"[R]evocation decisions are reviewed for abuse of discretion," while "the legal and constitutional bases of the challenges thereto are reviewed de novo." *United States v. Brigham*, 569 F.3d 220, 232 (5th Cir. 2009); *see also, e.g.*, *United States v. Kersee*, 86 F.4th 1095, 1098 (5th Cir. 2023). "A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998). The errors raised herein were preserved, as noted in each section below, and therefore are reviewed for abuse of discretion.

> *B. The district court erroneously believed that revocation and imprisonment was mandatory in Mr. Morgan's case, ignoring its duty to consider his participation in treatment.[4]*

18 U.S.C. § 3583 governs the revocation of supervised release. Subsection 3583(g) generally requires revocation and imprisonment

---

[4] Defense counsel argued that the court should not revoke Mr. Morgan's supervised release because he successfully completed inpatient treatment, was actively participating in outpatient treatment, and was committed to his recovery, thereby preserving this issue for appeal. *See* ROA.459–60, ROA.462, ROA.403–04; *see*

when a defendant violates supervision by unlawfully possessing a controlled substance. § 3583(g)(1). However, the statute also provides an exception to that rule, which district courts *must* consider before deciding to revoke supervised release and impose a term of imprisonment. Subsection 3583(d) states: "The court *shall* consider whether the availability of appropriate substance abuse treatment programs, *or an individual's current or past participation in such programs*, warrants an exception . . . from the rule of section 3583(g) when considering any action against a defendant who fails a drug test." (emphases added); *see also* U.S.S.G. § 7C1.5, cmt. App. Note 3.

The district court ignored this clear statutory mandate in revoking Mr. Morgan's supervised release and imposing a term of imprisonment. At no point did the court address Mr. Morgan's successful completion of a 30-day inpatient treatment program or the fact that he demonstrated full compliance with supervision following that treatment. Notably, the court did not even mention § 3583(d) in its remarks. Moreover, while it

---

*also* Fed. R. Crim. P. 51(b) ("A party may preserve a claim of error by informing the court . . . of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection."); *Holguin-Hernandez v. United States*, 589 U.S. 169, 170–71 (2020) (explaining that Fed. R. Crim. P. 52(b) "provide[s] two ways" of preserving an issue for appeal).

cited Guideline commentary mirroring § 3583(g)'s mandatory revocation requirement, *see* ROA.462 (citing U.S.S.G. § 7B1.4, cmt. n.5 (2024)), it did not reference the subsequent commentary mirroring § 3583(d)'s requirement that courts consider whether participation in treatment warrants an exception to that rule, *see* U.S.S.G. § 7B1.4, cmt. n.6 (2024).[5] Immediately after referencing the mandatory revocation commentary, the court simply stated that there was "no dispute as to the fact that there [were] . . . positive tests for drugs" and proceeded with discussing the sentencing parameters following revocation, never addressing Mr. Morgan's successful completion of inpatient treatment or his conduct thereafter. ROA.462.

The court thus legally erred by treating revocation as mandatory based on Mr. Morgan's positive drug tests without considering whether his participation in treatment warranted an exception from that rule. There was ample evidence in this case to support the conclusion that Mr. Morgan's participation in treatment sufficiently addressed the issues underlying his violations, rendering revocation inappropriate. The court

---

[5] As discussed below, the court cited commentary from the 2024 Guidelines Manual, revealing that it erroneously relied on an outdated version of the Guidelines. That error independently requires vacatur of the court's revocation ruling.

16

abused its discretion by ignoring that evidence and its statutory obligation to consider it. This error alone requires vacatur of the court's revocation judgment and remand for a new hearing.

### C. The district court erroneously relied on an outdated version of the Guidelines Manual in revoking Mr. Morgan's supervision.[6]

The district court committed a second, independent legal error in revoking and sentencing Mr. Morgan. The court applied the wrong version of the Sentencing Guidelines at his December 11, 2025, revocation hearing—relying on the 2024 Guidelines Manual instead of the 2025 Guidelines Manual that governed his proceeding.

Congress, the Sentencing Commission, and this Court have all made clear that district courts "must apply the version of the sentencing guidelines effective at the time of sentencing unless application of that version would violate the Ex Post Facto Clause of the Constitution." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also* 18 U.S.C. § 3553(a)(4) (requiring courts to consider the applicable Guidelines that "are in effect on the date the defendant is sentenced"); § 3583(e) (requiring courts to consider § 3553(a)(4) in revocation

---

[6] Defense counsel argued that revocation was inappropriate based on the policy statements in the 2025 Guidelines Manual, thereby preserving this issue for appeal. ROA.404–05.

proceedings); U.S.S.G. § 1B1.11 ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced" unless doing so would violate the Ex Post Facto Clause.).

Mr. Morgan's revocation hearing was held on December 11, 2025, after the 2025 Guidelines Manual went into effect on November 1, 2025. In 2025, the Sentencing Commission restructured and made extensive revisions to the policy statements applicable to revocation proceedings.[7] First, in recognition of the fact that probation and supervised release serve different purposes—with supervised release primarily fulfilling "rehabilitative ends"—the 2025 Guidelines Manual "divides Chapter Seven into Part B (Violations of Probation) and Part C (Violations of Supervised Release)[.]" 2025 Amend., at p. 35. Previous versions of the Guidelines Manual addressed "Probation and Supervised Release Violations" together in Chapter 7, Part B. Additionally, to address concerns that the Guidelines needed "a more flexible, individualized approach to supervised release violations," the newly introduced Part C

---

[7] Amendments to the Sentencing Guidelines, U.S. SENTENCING COMM'N, pp. 31–77 (Apr. 30, 2025, *eff.* Nov. 1, 2025), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf ("2025 Amend.").

includes several provisions "encouraging courts to consider a graduated response to a defendant's non-compliant behavior." *Id.* at pp. 35–37.

The district court clearly relied on the 2024 Guidelines Manual in deciding to revoke Mr. Morgan's supervised release and sentence him to a term of imprisonment. In discussing the policy statements applicable to the proceeding, the court cited U.S.S.G. § 7B1.1 and § 7B1.4, which *previously* applied to probation and supervised release violations but *now* only apply to probation violations. In fact, the court cited "7B1.4, comment 5," which does not even exist in the 2025 Guidelines Manual. The provision the court was referencing was relocated to Application Note 2 in the commentary to § 7C1.5.

The impact of this error went far beyond mere citation discrepancies. The Sentencing Commission introduced important, substantive changes to the policy statement governing supervised release violations through the 2025 amendments. In particular, the new policy statement in Chapter 7, Part C, emphasizes the importance of "individualized assessments" in revocation proceedings and the need to focus on rehabilitation, not punishment. U.S.S.G. Ch. 7, Pt. C, intro. cmt.

For example, the introductory commentary to Part C states:

19

> Because supervised release is intended to promote rehabilitation and ease the defendant's transition back into the community, the Commission encourages courts—where possible—to consider a wide array of options to respond to non-compliant behavior and violations of the conditions of supervised release. These interim steps before revocation are intended to allow courts to address the defendant's failure to comply with court-imposed conditions and to better address the needs of the defendant while also maintaining public safety. If revocation is mandated by statute or the court otherwise determines revocation to be appropriate, the sentence imposed upon revocation should be tailored to address the failure to abide by the conditions of the court-ordered supervision; imposition of an appropriate punishment for new criminal conduct is not the primary goal of a revocation sentence. The determination of the appropriate sentence on any new criminal conviction that is also a basis of the violation should be a separate determination for the court having jurisdiction over such conviction.

The Sentencing Commission explained that this "introduction highlights [its] view that courts should consider a wide array of options to address violations of supervised release and that any sentence imposed upon revocation should be tailored to address the failure to abide by supervision conditions, as imposition of an appropriate punishment for new criminal conduct is not the primary goal of a revocation sentence." 2025 Amend., p. 36.

Additionally, the Commission added a new policy statement intended to "underscore[] the importance of using a graduated response

20

to non-compliant behavior." 2025 Amend., p. 36 (citing U.S.S.G. § 7C1.3). That policy statement instructs courts to "conduct an individualized assessment to determine what response, if any, is appropriate" to address reports of non-compliance. § 7C1.3(a). Moreover, if revocation is not statutorily required, § 7C1.3(b) states that while revocation is "generally appropriate" for Grade A violations and "often appropriate" for Grade B violations, it only "may" be appropriate for Grade C violations. The commentary to § 7C1.3 also specifically states: "If revocation is not statutorily required, the court may also consider an informal response, such as issuing a warning while maintaining supervised release without modification, continuing the violation hearing to provide the defendant time to come into compliance, or directing the defendant to additional resources needed to come into compliance." § 7C1.3, cmt. n.2.

Mr. Morgan's violations were all Grade C violations, which largely stemmed from his longstanding drug addiction. Prior to his revocation hearing, he was placed in inpatient treatment, successfully completed that program, returned to his previous employment, and had no further issues of non-compliance. Nonetheless, and contrary to the applicable policy statements in the 2025 Guidelines Manual, the district court

21

deemed revocation mandatory, ignored his successful participation in treatment, failed to conduct an individualized assessment of his circumstances (including his employment, familial obligations, etc.), and focused on punishment rather than the primary goal of rehabilitation. *See* ROA.462 (finding revocation mandatory and offering Mr. Morgan the opportunity to "present any information you may wish in terms of *mitigation of punishment*" (emphasis added)).

Notably, defense counsel highlighted the 2025 Guidelines' policy statement in Mr. Morgan's motion to reconsider the revocation judgment. *See* ROA.404–05. Counsel also drew the court's attention to *Esteras v. United States*, 606 U.S. 185, 195 (2025), in which the Supreme Court held that "[d]istrict courts cannot consider [the punishment-related sentencing goals in] § 3553(a)(2)(A) when revoking supervised release." ROA.402–03. In *Esteras*, the Court further explained—as the 2025 Guidelines Manual does—that supervised release, unlike probation, "is not a punishment in lieu of incarceration" but rather "fulfills rehabilitative ends and provides individuals with post confinement assistance." 606 U.S. at 196 (internal quotation marks and citations omitted). Thus, in deciding how to address supervised release violations,

courts must focus on "the forward-looking ends of sentencing" and "may not consider the backward-looking purpose of retribution." *Id.* Still, the district court denied Mr. Morgan's motion for reconsideration based on the same "reasons previously given from the bench at the December 11, 2025, revocation hearing," never acknowledging the 2025 Guidelines Manual's call for individualized, graduated responses focused on rehabilitation and public safety rather than punishment. ROA.439.

Accordingly, the court's error in applying the 2024 Guidelines Manual rather than the revised policy statements in the 2025 Guidelines Manual also requires vacating the revocation judgment and remanding for a new hearing.

### D. The district court relied on a clearly erroneous assessment of the evidence in revoking Mr. Morgan's supervision.[8]

Finally, the district court abused its discretion because its decision to revoke Mr. Morgan's supervised release was based on a clearly erroneous assessment of the evidence. This, too, requires remand.

First, the court repeatedly suggested that Mr. Morgan's violations were attributable to him spending time with "the same group and the

---

[8] Defense counsel specifically identified these errors in the district court's assessment of the evidence, thereby preserving this issue for appeal. ROA.466, ROA.399–402.

same friends that [he had] before." ROA.459; *see also id.* ("You can't go right back to the same group and the same friends that you ha[d] before. It's going to just repeat and it's going to get worse on you."); ROA.464 ("[Y]ou've been sentenced, you know what it is there. Outside and you go right back to the same group and the same opportunities you have before you."). The court told Mr. Morgan that he needed "to be more selective of [his] friends" and "establish a new group." ROA.464 ("As I've often said, [friends are] like an elevator, boy, they can bring you up but they can sure take you down."). But there was no evidence whatsoever that Mr. Morgan was associating with any particular people, much less that his associations had anything to do with his violations, which stemmed from his own personal drug use. *See United States v. Gentry*, 941 F.3d 767, 788 (5th Cir. 2019) ("Sentences based upon erroneous and material information or assumptions violate due process." (internal quotation marks and citation omitted)). Notably, when defense counsel pointed out that the court was relying on inaccurate information regarding Mr. Morgan's social life—both at the revocation hearing and in the motion for reconsideration—the court ignored it entirely. *See* ROA.466, ROA.399–400.

24

Additionally, the district court repeatedly stated that Mr. Morgan's conduct was "getting worse" and described him as being on "a downward slope" at the time of the December 2025 revocation hearing. ROA.458–59; ROA.467–68. But as defense counsel explained throughout the proceeding, Mr. Morgan had *improved* in the period leading up to his revocation hearing. Following his arrest, he was released on bond, completed inpatient treatment, resumed his employment, was supporting his children, had no further issues of non-compliance, and was continuing to attend outpatient treatment. In other words, he was getting *better*, not worse, because he finally received appropriate treatment for his longstanding substance abuse issues.

The court also indicated that it believed Mr. Morgan's conduct was "getting worse" based on his domestic battery case, which resulted in a plea to misdemeanor charges with no jail time. ROA.467 ("I am just concerned with domestic violence, this type [of] situation. It's getting worse for him."); *id.* ("He first takes marijuana, then he's got other things, also, and then domestic violence. It looks to me like it's getting worse."); *id.* ("I mean, there's a victim involved in that type of situation and we're getting worse. Hopefully he'll change his ways, but from my standpoint,

25

I can't take the chance of somebody getting hurt."). But that case arose from a single incident that occurred more than a year earlier, in September 2024. ROA.680. Mr. Morgan had no prior history of violence, *see* ROA.533–35, the dispositional report contained no details regarding the circumstances of the offense, *see* ROA.680, Mr. Morgan had no subsequent arrests, and defense counsel explained—with no dispute from the government or probation—that this was an aberration, ROA.468.

Finally, the court told Mr. Morgan: "[T]he problem I have is that we've given you so many times, so many opportunities, and you just don't show up at these things. You didn't even show up for your court appearance." ROA.464. That was clearly inaccurate. This was Mr. Morgan's first time answering for violations of supervised release. *See* ROA.401. Following his release on bond, he complied with an order to complete a 30-day inpatient treatment program, complied with all of his other conditions of supervision, and, of course, appeared for his revocation hearing on December 11, 2025. While it is true that Mr. Morgan *previously* failed to appear in *state* court and stopped communicating with his probation officer for a period, it clearly was not the case that Mr. Morgan was continuously failing to take advantage of

opportunities offered to him, as the court apparently concluded. The opposite was true. After completing inpatient treatment, Mr. Morgan continued attending outpatient treatment, maintained perfect compliance with his conditions of release, and "show[ed] up" for court.

The district court's conclusions about Mr. Morgan's conduct and trajectory were clearly erroneous, particularly in view of his completion of treatment and record of compliance on bond. The court therefore abused its discretion in revoking Mr. Morgan's supervised release and imposing a term of imprisonment because its decision was based on a clearly erroneous assessment of the evidence. A new hearing is required.

**II.    At the very least, the district court abused its discretion when it denied Mr. Morgan's unopposed request to continue the revocation hearing.**

*A. Standard of Review*

This Court reviews a district court's denial of a request for a continuance for abuse of discretion. *United States v. Pearson*, 477 F. App'x 149, 150 (5th Cir. 2012) (unpublished). To satisfy the abuse of discretion standard in this context, the denial of a continuance must have been "arbitrary []or unreasonable" and resulted in "serious prejudice." *United States v. Stalnaker*, 571 F.3d 428, 439 (5th Cir. 2009). Defense

counsel repeatedly requested a continuance of the revocation hearing below and objected to the district court's denial of that request, thereby preserving this issue for appellate review.

> B. *The district court abused its discretion by denying Mr. Morgan's unopposed request for a continuance.*

It was arbitrary and unreasonable to deny Mr. Morgan's unopposed request to continue his revocation hearing to allow him to demonstrate that his participation in treatment made revocation unwarranted. It also was arbitrary and unreasonable to deny the continuance because it prevented Mr. Morgan from presenting evidence to refute the district court's erroneous assumptions about his conduct.

Mr. Morgan's violations consisted primarily of positive drug tests and failures to communicate with his probation officer. ROA.680–81. He also had new misdemeanor convictions based on an incident that occurred in September 2024, for which he received a suspended jail sentence with inactive probation. ROA.680. Defense counsel explained throughout the proceeding—with no dispute from the government or probation—that Mr. Morgan's violations ultimately stemmed from his longstanding drug addiction and that he was finally back on the right track after having completed a 30-day inpatient treatment program.

ROA.459–60, ROA.462–64. He was gainfully employed, complying with his bond conditions, raising and supporting his children, and spending time with his family. ROA.459–60, ROA.462–64. Counsel merely requested that the court continue the revocation proceeding to allow Mr. Morgan to continue demonstrating his ability to comply with supervision, explaining that this proceeding "was a huge wakeup call" and that "rehab was a game changer" for him. ROA.460, ROA.463–64. Mr. Morgan similarly expressed that he had new perspective following rehab and asked the court for "a chance to prove that [he] will follow through on the things that [he] should follow through on[.]" ROA.463.

It was unreasonable for the court to proceed with revoking Mr. Morgan's supervised release and sentencing him to imprisonment, rather than granting the continuance he requested. The government did not oppose Mr. Morgan's request to reset the hearing for a later date, nor did the government dispute the positive impact that inpatient treatment had on his conduct and compliance. ROA.464. Moreover, as previously discussed, the applicable statute and Guideline policy statements *required* the court to consider whether his participation in treatment warranted an exception to revocation. All evidence pointed to the

conclusion that Mr. Morgan's completion of treatment rendered revocation unnecessary and counterproductive. But if the court did not believe it had sufficient evidence to reach that conclusion at the hearing, plowing ahead with revocation and imprisonment rather than continuing the hearing to collect more data was simply unreasonable. That is especially true considering the new Guideline policy statement's suggestion that courts consider "continuing [a] violation hearing to provide the defendant time to come into compliance" when revocation is not statutorily required. § 7C1.3, cmt. n.2.

Although the court suggested at the end of the hearing that it was concerned for the safety of the victim in the battery case, ROA.467–68, that was pure speculation based on the domestic nature of the charge. There was simply no evidence to suggest that Mr. Morgan posed a present threat to her (or anyone else's) safety. To the contrary, a U.S. Magistrate Judge concluded that Mr. Morgan could safely be released on bond conditions, and no issues arose while Mr. Morgan was on bond. Moreover, the district court clearly did not view Mr. Morgan as an imminent threat to anyone's safety because it did not hesitate to grant his request for a surrender date after the holidays, allowing him to

30

remain on the same bond conditions for another month. ROA.466–67. Considering the circumstances, there was no conceivable reason for the court to arbitrarily deny Mr. Morgan's request to continue the hearing— even if only for the same period that the court gave him to surrender.

At the very least, denying Mr. Morgan's continuance request was arbitrary and unreasonable because it prevented him from presenting evidence that would refute the court's unsupported assumptions and speculation about his conduct. As previously discussed, the district court erroneously concluded that Mr. Morgan was spending time with ostensibly "bad" people, that his conduct was "getting worse," and that he was not taking advantage of the opportunities available to him. While some of the court's conclusions were directly contradicted by the record evidence, others were based on pure speculation with no record support. Defense counsel advised the court that witnesses could testify and refute the court's assumptions about Mr. Morgan's social life and conduct. ROA.466–67, ROA.400, ROA.405. Refusing to provide the defense that opportunity was arbitrary and unreasonable.

Finally, the court's denial of Mr. Morgan's continuance request seriously prejudiced him. The purpose of supervised release is to promote

31

rehabilitation and facilitate a defendant's transition into the community. *See, e.g.*, U.S.S.G. Ch. 7, Pt. C, intro. cmt.; *Esteras*, 606 U.S. at 195–96. In this case, Mr. Morgan had several missteps, but in the period leading up to his revocation hearing, he successfully completed inpatient treatment and, by all accounts, was getting his life back on track. When the court denied his request for a continuance, it deprived him of the opportunity to continue demonstrating that the inpatient care he received (and his ongoing participation in outpatient treatment) rendered revocation unnecessary. *See* § 3583(d). Likewise, it denied him the opportunity to present witnesses to refute the erroneous factual assumptions upon which the court relied to revoke his supervised release and sentence him to a term of imprisonment. Absent the court's arbitrary and unreasonable denial, Mr. Morgan could have avoided revocation and imprisonment altogether, allowing him to remain at home, maintain his employment, and continue with his recovery and progress. Instead, he will have to start over when he is ultimately released in a few months.

For these reasons, this Court should find that the district court abused its discretion by denying Mr. Morgan's request for a continuance and vacate the revocation judgment.

## CONCLUSION

For the foregoing reasons, Mr. Morgan respectfully requests that this Court vacate the revocation judgment and remand for a new hearing.

Respectfully submitted,

CLAUDE J. KELLY
Federal Public Defender
Eastern District of Louisiana

*/s/ Samantha Kuhn*
SAMANTHA J. KUHN
Assistant Federal Public Defender
500 Poydras Street, Suite 318
Hale Boggs Federal Building
New Orleans, Louisiana 70130
(504) 589-7930
Samantha_Kuhn@fd.org

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 18, 2026, the foregoing

Appellant's Brief was filed with the Clerk of Court via the electronic filing

system, which will send an electronic Notice of Docket Activity to the

following Filing Users:

> Kevin G. Boitmann, kevin.boitmann@usdoj.gov,
> Patrick Stevens Barr, patrick.barr@usdoj.gov,
> Maria Michelle Carboni, maria.carboni@usdoj.gov, and
> Megan Roberts, megan.roberts@usdoj.gov,
>     Assistant United States Attorneys.

"The court's electronic Notice of Docket Activity constitutes service of the

filed document on all Filing Users." 5TH CIR. R. 25.2.5.

/s/ Samantha Kuhn
SAMANTHA J. KUHN
Assistant Federal Public Defender

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that:

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,188 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, 14-point font for text and 12-point font for footnotes.

3.  This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a)(5), 5th Cir. R. 25.2.13, and Fed. R. Crim. P. 49.1, because it has been redacted of personal data identifiers.

4.  This electronic submission is an exact copy of the paper document, in compliance with 5th Cir. R. 25.2.1.

5.  This brief is free of viruses because it has been scanned for viruses with the most recent version of Symantec Endpoint Protection, in compliance with 5th Cir. ECF Filing Standard A(6).

*/s/ Samantha Kuhn*
SAMANTHA J. KUHN
Assistant Federal Public Defender
Dated: March 18, 2026